```
RANDY S. GROSSMAN
United States Attorney
Shane P. Harrigan
Fred Sheppard
Assistant United States Attorney
California Bar Nos. 115757/250781
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-6981/8237
Email: shane.harrigan@usdoj.gov
       fred.sheppard@usdoj.gov

Attorneys for United States of America
```



**FILED**
DEC 17 2021
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>     v.<br><br>ABDULLAHI AHMED ABDULLAHI,<br>   aka "Phish,"<br>   aka "Fish,"<br><br>          Defendant. | Case No.  17cr0622-W<br><br>PLEA AGREEMENT |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, Acting United States Attorney, and Shane P. Harrigan and Fred Sheppard, Assistant United States Attorneys, and defendant, ABDULLAHI AHMED ABDULLAHI ("Defendant"), with the advice and consent of Marc X. Carlos and Thomas A. Durkin, counsel for Defendant, as follows:

### I

### THE PLEA

Defendant agrees to plead guilty to Counts 1 and 2 of Indictment in Criminal Case No. 17cr0622-W, which charges Defendant with Conspiracy to Provide Material Support to Terrorists and Providing Material Support to Terrorists, and Aiding and Abetting as follows:



Count 1

Beginning in or about August of 2013 through in or about November of 2014, defendant ABDULLAHI AHMED ABDULLAHI, aka "Phish," coconspirator #1, aka "Tooth," aka "Toothman," aka "Duale" (hereinafter "Tooth"), coconspirator #2, aka "Little Man," aka "Lil Homie," aka "Lil N****," aka "H-man" (hereinafter "Little Man"), coconspirator #3, aka "Farmer," aka "Farmer G.," aka "Abu Rassas," aka "Rassas" (hereinafter "Farmer"), coconspirator #4, aka "Abu Zubayr," aka "Zubayr," aka "Z-man" (hereinafter "Zubayr") and coconspirator #5, aka "Sleepy" (hereinafter "Sleepy"), did knowingly and intentionally conspire and agree with each other and others, known and unknown to the Grand Jury, to provide material support and resources as defined in Title 18, United States Code, Section 2339A(b), namely: currency and monetary instruments (collectively "money"), and personnel, to include, defendant ABDULLAHI, Tooth, Little Man, Farmer, Zubayr and Sleepy, and others, knowing and intending that such money and personnel were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to kill, kidnap, maim or injure persons in a foreign country.

Count 2

From on or about February 22, 2014 to on or about March 9, 2014, within the Southern District of California and elsewhere, defendant ABDULLAHI AHMED ABDULLAHI, aka "Phish," aka "Fish," did knowingly and intentionally provide, and attempt to provide, material support and resources, as defined in Title 18 United States Code, Section 2339A(b), namely, currency and monetary instruments (collectively "money"), and personnel, that is, Tooth and Little Man, knowing and intending that such money and personnel were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a), that is, a conspiracy to kill, kidnap, maim or injure persons in a foreign country; all in violation of Title 18, United States Code, Sections 2339A(a) and 2.

The United States further agrees to not charge Defendant with any additional conduct that is presently known to the United States unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason.

Plea Agreement                             2                        Def. Initials _____
                                                                    17CR0622-W

II

**NATURE OF THE OFFENSE**

A.  ELEMENTS EXPLAINED

Defendant understands that the offense to which Defendant is pleading guilty has the following elements:

Count 1 - Conspiracy to Provide Material Support to Terrorists

1. There was an agreement between two or more persons to provide material support or resources, knowing or intending that such support or resources would be used in preparation for or in carrying out a conspiracy to kill, kidnap, maim or injure persons or damage property in a foreign country, in violation of 18 U.S.C. § 956; and

2. Defendant became a member of the conspiracy knowing of at least one of its objects an intending to accomplish it.

Count 2 - Providing Material Support to Terrorists

1. Defendant provided material support or resources, that is, currency or monetary instruments or personnel; and

2. Defendant did so knowing or intending that such support or resources would be used in preparation for or in carrying out a conspiracy to kill, kidnap, maim or injure persons or damage property, in violation of 18 U.S.C. § 956.[1]

---

[1] The Defendant also understands that a violation of section 956 has the following elements: (1) an agreement between two or more persons to murder, maim or kidnap another person at a place outside the United States; (2) that while within the jurisdiction of the United States, one of the coconspirators joined the agreement with the intent to

3

Def. Initials [signature]

17CR0622-W

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. In or before November 2013 and continuing through on or about November 2014, Defendant agreed with others to provide money, that is approximately $4,650, and persons, including Douglas Mcauthur McCain, aka "Tooth" ("Douglas") and Defendant's cousins, Hamsa Kariye, aka Farmer ("Hamsa"), Hirsi Kariye, aka "Zubayr" ("Hirsi"), Hanad Mohallim, aka "Little Man" ("Hanad") and Mahad Hirsi, aka "Sleepy" ("Mahad"), knowing that such money and persons would be used in the preparation for or in carrying out terrorist activities in Syria, which activities included the killing, kidnapping and maiming of persons.

2. On November 10 and 11, 2013, Hamsa, Hirsi and Mahad traveled from Edmonton to Istanbul, Turkey to support and join terrorist fighters engaged in terrorist activity in Syria, including the killing, kidnapping and maiming of persons. Defendant knew of their travel and the purpose of their travel.

3. After arriving in Turkey in November 2013, Hamsa, Hirsi and Mahad subsequently traveled to Syria where they joined the Islamic State of Iraq and Syria ("ISIS"), a foreign terrorist organization, and engaged in armed battles to gain control of the territories and civilian populations within Syria on behalf of ISIS.

4. Following Hamsa's departure from Canada, from on or about November 12 through on or about November 25, 2013, in Alberta Canada, Defendant made cash withdrawals totaling

further its purpose; and (3) that during the existence of the agreement, one of the coconspirators committed at least one overt act within the jurisdiction of the United States to effect any object of the agreement.

4

Def. Initials [handwritten]

17CR0622-W

approximately $2,800 Canadian Dollars (CAD) from Hamsa's bank account using Hamsa's debit card for the purpose of sending money to Hamsa and other coconspirators engaged in or planning to engage in in terrorist activities in Syria, including the killing, kidnapping and maiming of persons.

5. Following the departure of Hamsa, Hirsi and Hanad, in or about late 2013 or early 2014, Defendant, using the moniker "Phish," sent an email message to Hamsa and Hirsi in which he indicated that that he heard that Hamsa, Hirsi and others had been successful in killing their enemies in battle in Syria and that Hirsi was a very good marksman with a firearm.

6. In or about late 2013 or early 2014, Hamsa sent email messages to the Defendant in which he urged Defendant to travel to Syria and join them in fighting for ISIS.

7. In or about late 2013 or early 2014, Hirsi sent an email message to Defendant and others in which he requested that they send money to Hanad in the United States to finance Hanad's travel to support and join terrorist fighters engaged in terrorist activity in Syria, and also encouraged Defendant and others to steal and commit fraud against the "kuffar" (a pejorative term used to describe non-Muslims) to raise such money claiming that such criminal activity was permissible under Islamic law (i.e., "halal").

8. On or about January 9, 2014, in Edmonton, Alberta, Canada, Defendant committed an armed robbery of a jewelry store for the purpose of financing the travel and efforts of his coconspirators in supporting and joining terrorist fighters engaged in terrorist activity in Syria, including the killing, kidnapping and maiming of persons.

9. In or after February 2014, Defendant, using the moniker "Phish," sent an email message to Hamsa in which he explained that the delays in sending money to Hamsa and others in Syria was due to difficulties he was experiencing in pawning the jewelry he stole in the January 2014 armed robbery of the Edmonton jewelry store.

10. On three occasions from February 22, 2014 through March 3, 2014, the Defendant wired, via Western Union, a total of

Def. Initials
17CR0622-W

approximately $3,050 U.S. Dollars (USD) from Edmonton to Douglas and a third party in San Diego County, California, for the purpose of financing the travel of Douglas and Hanad to Syria to join Hamsa, Hirsi, Mahad and other terrorist fighters engaged in terrorist activity in Syria, including the killing, kidnapping and maiming of persons.

11. In or before early March 2014, Defendant, using the moniker "Phish," sent an email message to Hanad in which he instructed Hanad to contact Douglas about getting the airline tickets for his travel to Syria and stated that he hoped to join them on the battlefield in Syria.

12. In or about early March 2014, Defendant, using the moniker "Phish," sent an email message to Hamsa in which he stated that he had wired $3,000 to Douglas, which monies were used to purchase airline tickets for their travel to Turkey, and that he was planning to send Hanad some additional travel money before Hanad departed.

13. On or about March 7, 2014, Defendant caused a third party to wire approximately $150 USD from Edmonton to another third party in Minneapolis, Minnesota for the purpose of providing travel money to Hanad so that Hanad could join and support Hamsa, Hirsi, Mahad and other terrorist fighters engaged in terrorist activity in Syria.

14. On or about March 8, 2014, Douglas, using the money provided by the Defendant, caused airline tickets to be purchased for Hanad and himself to fly from the United States to Turkey for the purpose of joining Hamsa, Hirsi, Mahad and other terrorist fighters engaged in terrorist activity in Syria, including the killing, kidnapping and maiming of persons.

15. On or about March 9, 2014, Douglas, a U.S. citizen, traveled from San Diego, California, to Istanbul, Turkey in order to join and support Hamsa, Hirsi, Mahad and other terrorist fighters engaged in terrorist activity in Syria, including the killing, kidnapping and maiming of persons.

16. On or about March 9, 2014, Hanad, a U.S. citizen, traveled from Minneapolis, Minnesota to Istanbul, Turkey in order to join and support Hamsa, Hirsi, Mahad and other terrorist

6

Def. Initials [signature]

17CR0622-W

fighters engaged in terrorist activity in Syria, including the killing, kidnapping and maiming of persons.

17. After arriving in Turkey, in or about March 2014, Douglas and Hanad subsequently traveled to Syria where they joined ISIS, and engaged in armed battles to gain control of the territories and civilian populations within Syria on behalf of ISIS.

18. In or about early March 2014, Defendant, using the moniker "Phish," sent an email message to Hamsa in which Defendant promised to send "every dime that[']s in [his] pocket" to Hamsa and other terrorist fighters engaged or planning to engage in terrorist activity in Syria, including $900 from a tax refund and the $2800 CAD that Defendant withdrew from Hamsa's bank account in November 2013.

19. On or about March 17 and April 23, 2014, Defendant caused a third party in Dubai, U.A.E., to wire a total of approximately $1,458 USD, via Western Union, to individuals in Gaziantep, Turkey for the purpose of supporting Hamsa, Hirsi, Mahad, Douglas, Hanad and other foreign fighters engaged in terrorist activity in Syria.

20. On or about August 25, 2014, Douglas was killed while fighting for ISIS against Free Syrian Army forces in Syria.

21. In or about November 2014, Hamsa, Hirsi, Mahad and Hanad were killed while fighting for ISIS in Syria.

## III

## PENALTIES

Defendant understands that the each of the Counts to which defendant is pleading guilty carries the following penalties:

1. a maximum 15 years in prison;
2. a maximum $250,000 fine;
3. a mandatory special assessment of $100 per count; and
4. a term of supervised release of up to 3 years. Defendant understands that failure to comply with any of the

7

Def. Initials [signed]

17CR0622-W

conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release.

Defendant faces a total maximum penalty under Counts 1 and 2 as follows: a maximum term of imprisonment of thirty years; a maximum fine of $500,000; a mandatory special assessment totaling $200.00, and a three year term of supervised release.

In addition, Defendant may be subject to an order of restitution to an Edmonton jewelry story requiring Defendant to repay up to $40,000 to the owner of said business.

## IV

### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

Defendant understands that this guilty plea waives the right to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages of trial;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F. Not testify or have any adverse inferences drawn from the failure to testify.

## V

### DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. Defendant understands that, by pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant further understands that the conviction in this case may subject Defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences; revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or

revocation of a professional license, none of which will serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge

the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

A.   SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. **Base Offense Level**
   [USSG § 2M5.3 – *Providing Material Support*]                **26**

2. **Terrorism Enhancement**
   [USSG § 3A1.4(a) – *Offense Involved a Federal Crime of Terrorism*]                **+12***

11

Def. Initials ____

17CR0622-W

### 3. Acceptance of Responsibility
### USSG §§ 3E1.1(a) and (b)       -3

*The parties also agree that pursuant to the Terrorism Enhancement of USSG § 3A1.4(b), Defendant's Criminal History Category is increased to a Category VI.

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or
4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Pursuant to 18 U.S.C. § 3553, the parties jointly agree to recommend a sentencing reduction from the applicable advisory sentencing guideline range as calculated under the terms of this agreement to a sentence of 240 months. The Defendant may not request or recommend any additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553.

D. AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

As set forth in Section X, paragraph A above, the parties agree that Defendant's Criminal History Category is a Category VI.

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The parties agree that the facts in the "factual basis" paragraph of this agreement are true, and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. PARTIES' RECOMMENDATIONS REGARDING CUSTODY

The parties will jointly recommend that Defendant be sentenced to 240 months in custody. The parties agree that the Court should impose this 240-month sentence pursuant to USSG § 5G1.2(d), e.g., impose the maximum statutory sentence of 180 months on Count 1, and impose a 60 month sentence on Count 2, to run consecutively to Count 1.

The parties agree that, pursuant to 18 U.S.C. § 3585, the Bureau of Prisons should award Defendant custody credit for the time served in Canadian custody pursuant to the extradition request by the U.S., that is for the time spanning from Defendant's September 15, 2017 arrest, by Canadian authorities, up to on or about October 24, 2019.

G. SPECIAL ASSESSMENT/FINE/RESTITUTION

1. Special Assessment.

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. The special assessment shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2.   Fine.

The parties will jointly recommend that Defendant not pay a fine as he does not have the financial ability to pay a fine.

3.   Restitution

Defendant admits that on January 9, 2014, Defendant stole jewelry from a jewelry store in Edmonton, Alberta, Canada. The parties agree that any restitution with respect to relevant conduct falls under Title 18, United States Code, Section 3663. The parties also agree that Defendant does not presently have the ability to pay restitution. Defendant acknowledges that the Court has the discretion to impose restitution for the relevant conduct in any amount up to $40,000.

H.   SUPERVISED RELEASE

If the Court imposes a term of supervised release, Defendant agrees that he will not later seek to reduce or terminate early the term of supervised release until he has served at least 2/3 of his term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment.

XI

**DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK**

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order over $50,000. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged.

14

Def. Initials
17CR0622-W

## XII

## BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;
6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or
7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges

including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No

16

Def. Initials _[initials]_

17CR0622-W

modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Def. Initials ✍

17CR0622-W

XV

**DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and his counsel did not advise him about what to say in this regard.

```
                                    RANDY S. GROSSMAN
                                    Acting United States Attorney

  12.16.21                          /s/ Shane P. Harrigan
DATED                               SHANE P. HARRIGAN
                                    FRED SHEPPARD
                                    Assistant U.S. Attorneys


  12/5/21                           /s/ Marc X. Carlos
DATED                               MARC X. CARLOS
                                    Counsel for Defendant
                                    Abdullahi Ahmed Abdullahi

  12/5/21                           /s/ Thomas A. Durkin
DATED                               THOMAS A. DURKIN
                                    Counsel for Defendant
                                    Abdullahi Ahmed Abdullahi
```

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

```
  12-15-21                          /s/ A. Abdullahi
DATED                               ABDULLAHI AHMED ABDULLAHI
                                    Defendant
```

18

Def. Initials AA

17CR0622-W